**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

Fernando Tatis,          )
                       )
         Plaintiff,   )
                       )   Case No. 1:03-CV-378
        v.            )
                       )
U.S. Bancorp,          )
                       )
         Defendant.   )

<u>Memorandum and Order</u>

       Plaintiff initiated this diversity action after Defendant paid several forged checks drawn on Plaintiff's account.  Plaintiff asserts claims of breach of contract, negligence, and violation of Ohio statutory law.

       Defendant moves for summary judgment with respect to Plaintiff's statutory claim on the ground that Defendant complied with the requirements of the applicable statutes by making statements of account available to Plaintiff and Plaintiff did not timely notify Defendant of the unauthorized checks upon which his claims are based.  Defendant seeks summary judgment with respect to Plaintiff's claims under common law on the ground that they are preempted by statute.  Plaintiff opposes the motion.

1.  <u>Background</u>

       The parties apparently agree that an employee of Plaintiff forged the checks in question and that the checks were initially presented to an entity known as TransPaq for payment.

TransPaq accepted the checks, and presented them to Defendant for payment. Defendant paid from Plaintiff's accounts. The parties disagree as to whether Defendant sent statements of account to Plaintiff or his designated agent, but they apparently agree that Plaintiff could have obtained a copy of those statements at any time. In other words, whether or not Defendant provided the statements, they were available to Plaintiff at all times.

Defendant contends that it is entitled to summary judgment with respect to Plaintiff's claim under Ohio statutory law because Plaintiff failed to notify Defendant of the unauthorized checks within the time prescribed by Ohio Revised Code ("O.R.C.") § 1304.35 as supplemented by Plaintiff's agreement with Defendant. Moreover, Defendant contends that TransPaq is liable for any losses resulting from the forgeries, in accordance with O.R.C. § 1345.18, because it initially paid the forged checks. Finally, Defendant contends that Plaintiff's common law claims for breach of contract and negligence are preempted by statute.

2.  <u>The Summary Judgment Standard</u>

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The evidence presented on a motion for summary judgment is construed in the light most favorable to the non-moving party, who is given the benefit of all favorable inferences that can be

2

drawn therefrom.  <u>United States v. Diebold, Inc.</u>, 369 U.S. 654 (1962).  "The mere existence of <u>some</u> alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact."  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986)(emphasis in original).

The Court will not grant summary judgment unless it is clear that a trial is unnecessary.  The threshold inquiry to determine whether there is a need for trial is whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  <u>Anderson</u>, 477 U.S. at 250.  There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party.  <u>Id.</u>

The fact that the weight of the evidence favors the moving party does not authorize a court to grant summary judgment.  <u>Poller v. Columbia Broadcasting System, Inc.</u>, 368 U.S. 464, 472 (1962).  "[T]he issue of material fact required by Rule 56(c) . . . to entitle a party to proceed to trial is not required to be resolved conclusively in favor of the party asserting its existence; rather, all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or a judge to resolve the parties' differing versions of the truth at trial."  <u>First National Bank v. Cities Service Co.</u>, 391 U.S. 253, 288-89 (1968).

Moreover, although summary judgment must be used with extreme caution since it operates to deny a litigant his day in court, <u>Smith v. Hudson</u>, 600 F.2d 60, 63 (6th Cir.), <u>cert.</u>

dismissed, 444 U.S. 986 (1979), the United States Supreme Court has stated that the "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy and inexpensive determination of every action.'" Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986). According to the Supreme Court, the standard for granting summary judgment mirrors the standard for a directed verdict, and thus summary judgment is appropriate if the moving party establishes that there is insufficient evidence favoring the non-moving party for a jury to return a verdict for that party. Id. at 323; Anderson, 477 U.S. at 250.

Accordingly, summary judgment is clearly proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322. Significantly, the Supreme Court also instructs that the "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion" against a party who fails to make that showing with significantly probative evidence. Id.; Anderson, 477 U.S. at 250. Rule 56(e) requires the non-moving party to go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." Id.

Further, there is no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or similar materials negating the opponent's claim. Id. Rule 56(a) and (b) provide that parties may move for summary judgment

4

"with or without supporting affidavits." Accordingly, where the non-moving party will bear the burden of proof at trial on a dispositive issue, summary judgment may be appropriate based solely on the pleadings, depositions, answers to interrogatories, and admissions on file.

    3. <u>Analysis</u>

       Plaintiff's ability to recover his losses resulting from the dishonest actions of his employee is governed, in large measure, by O.R.C. § 1304.35, which provides as follows:

> (A) A bank that sends or makes available to a customer a statement of account showing payment of items for the account shall either return or make available to the customer the items paid or provide information in the statement of account sufficient to allow the customer reasonably to identify the items paid. The statement of account provides sufficient information if the item is described by item number, amount, and date of payment.

> (B) If the items are not returned to the customer, the person retaining the items shall either retain the items or, if the items are destroyed, maintain the capacity to furnish legible copies of the items until the expiration of seven years after receipt of the items. A customer may request an item from the bank that paid the item, and that bank must provide in a reasonable time either the item or, if the item has been destroyed or is not otherwise obtainable, a legible copy of the item.

> (C) If a bank sends or makes available a statement of account or items pursuant to division (A) of this section, the customer must exercise reasonable promptness in examining the statement or the items to determine whether any payment was not authorized because of an alteration of an item or because a purported signature by or on behalf of the customer was not authorized. If, based on the statement or items provided, the customer should reasonably have discovered the unauthorized

payment, the customer must promptly notify the
bank of the relevant facts.
(D) If the bank proves that the customer failed
with respect to an item to comply with the duties
imposed on the customer by division (C) of this
section, the customer is precluded from asserting
either of the following against the bank:
    (1) The customer's unauthorized signature or
    any alteration on the item if the bank also
    proves that it suffered a loss by reason of
    that failure;
    (2) The customer's unauthorized signature or
    alteration by the same wrongdoer on any
    other item paid in good faith by the bank if
    the payment was made before the bank
    received notice from the customer of the
    unauthorized signature or alteration and
    after the customer had been afforded a
    reasonable period of time, not exceeding
    thirty days, in which to examine the item or
    statement of account and notify the bank.

(E) If division (D) of this section applies and
the customer proves that the bank failed to
exercise ordinary care in paying the item and that
the bank's failure substantially contributed to
the loss, the loss is allocated between the
customer who is precluded and the bank asserting
the preclusion according to the extent to which
the failure of the customer to comply with
division (C) of this section and the failure of
the bank to exercise ordinary care contributed to
the loss.  If the customer proves that the bank
did not pay the item in good faith, the preclusion
under division (D) of this section does not apply.

(F)  Without regard to care or lack of care of
either the customer or the bank, a customer who
does not within one year after the statement or
items are made available to the customer discover
and report his unauthorized signature on or any
alteration on the item is precluded from asserting
against the bank the unauthorized signature or
alteration [sic] if there is a preclusion under
this division, the payor bank may not recover for
breach of warranty under section 1304.28 of the
revised Code with respect to the unauthorized
signature or alteration to which the preclusion
applies.


Two critical issues arising under O.R.C. § 1304.35 are

the subject of disputes in the evidence submitted by the parties

in support of and opposition to Defendant's motion for summary judgment.  The first is whether, and when, Defendant made statements of Plaintiff's account available to Plaintiff.  The Court observes that the mailing of the statements to a party designated by Plaintiff is, for purposes of this action, irrelevant, inasmuch as the statute does not require that the statements be sent.  Subsection (A) clearly requires, to trigger the substantive provisions of the statute, only that the statements be made available.

Evidence submitted by Defendant suggests that statements complying with the requirements of subdivision (A) and reflecting the first of the unauthorized signatures were available for review by Plaintiff or his designee no later than September 2001.  That evidence does not reflect the date in September when the statements were available, and the Court uses, for the purposes of the present motion, September 30, 2001.  While Plaintiff has introduced evidence identifying a genuine issue of material fact as to whether Defendant sent the statements to Plaintiff or his designee with the same degree of timeliness, that evidence does not contradict Defendant's evidence showing that statements complying with the requirements of § 1304.35(A) were made available to Plaintiff no later than September 30, 2001.

Defendant contends that Plaintiff failed to exercise reasonable promptness in examining the statement and notifying Defendant of the first unauthorized signature.  Defendant argues that the loss with respect to the first unauthorized check signed by Plaintiff's employee was caused by Plaintiff's failure of

7

promptness and that, accordingly, Plaintiff is precluded from asserting a claim on the basis of that signature. See O.R.C. § 1304.35(D)(1). Defendant also contends that Plaintiff is precluded from asserting a claim against Defendant on the basis of subsequent unauthorized checks signed by the same wrongdoer by virtue of Plaintiff's failure to notify the bank of the first unauthorized signature within 30 days after the statement showing that signature was made available to him. See O.R.C. § 1304.35(D)(2).

The evidence introduced by Plaintiff to date suggests that Plaintiff or his designee may have notified Defendant of the unauthorized signatures as early as December of 2001, but more likely in January of 2002. While Plaintiff may not have seen the bank statements reflecting the unauthorized signatures until December of 2001, he has not introduced evidence that tends to show that the statements were not available to him or his designee at an earlier time.

Having not received the statements from Defendant prior to December of 2001, Plaintiff and his designee apparently made no effort to obtain or review them. Assuming for present purposes that Defendant made the first statement reflecting an unauthorized signature available to Plaintiff on September 30, 2001, Plaintiff was obligated by O.R.C. § 1304.35(D)(2) to examine the statement and notify Defendant of the unauthorized signature by October 30, 2001, or be precluded from asserting a claim based upon subsequent unauthorized signatures by the same wrongdoer. The evidence establishes unequivocally that he did not do so. Putting aside the additional provision of §

8

1304.35(E) for the moment, the Court concludes that Plaintiff is precluded by virtue of § 1304.35(D)(2) from asserting a claim based upon any checks forged by his employee after October 30, 2001.

While § 1304.35(D)(2) defines a specific period of time, § 1304.35(C) obligates a customer only to exercise "reasonable promptness" in examining a statement after it has been made available and notifying the bank of relevant facts. Plaintiff does not deny that copies of statements relating to the relevant account were "made available" to him as of September 30, 2001.  He, or his agent, alerted Defendants of a likely irregularity in the account January of 2002, and he argues that that period of delay is consistent with the reasonable promptness requirement of § 1304.35(C).  If the Court agrees with Plaintiff's assertion, Defendant may remain liable to Plaintiff for the loss arising from the first unauthorized signature.

Defendants contend that, while the statute does not explicitly define "reasonable promptness," the agreement between the parties specifies a timing requirement that may be substituted for, or used to clarify, the statutory requirement contained in § 1304.35(C).  Defendants observe that the parties agreed as follows:

> STATEMENTS - You must examine your statement of account with "reasonable promptness."  If you discover (or reasonably should have discovered) any unauthorized signatures or alterations, you must promptly notify us of the relevant facts.  As between you and us, if you fail to do either of these duties, you will have to either share the loss with us, or bear the loss entirely yourself (depending on whether we used ordinary care and, if not, whether we substantially contributed to the loss).  The loss could be not only

with respect to items on the statement but other items
with unauthorized signatures or alterations by the same
wrongdoer.

You agree that the time you have to examine your
statement and report to us will depend on the
circumstances, but will not, in any circumstance,
exceed a total of 30 days from when the statement is
first sent or made available to you.

You further agree that if you fail to report any
unauthorized signatures, alterations, forgeries, or any
other errors in your account within 60 days from when
we first send or make the statement available, you
cannot assert a claim against us on any items in that
statement, and as between you and us the loss will be
entirely yours.  This 60-day limitation is without
regard to whether we used ordinary care.  The
limitation in this paragraph is in addition to that
contained in the first paragraph of this section.

Such reductions of the statutory time periods are

permitted under the statute, which is part of Ohio's enactment of

the Uniform Commercial Code ("UCC").  See Crescent Women's

Medical Group, Inc. v. Keycorp, 806 N.E.2d 201, 203 (Hamilton

Cty. Mun. Ct. 2003)(citing Borowski v. Firstar Bank Milwaukee,

217 Wis.2d 565, 574, 578 (1998)(such contractual provisions are

compatible with the UCC and in accord with public policy by

limiting disputes in a society where millions of bank

transactions occur every day)).  See also Parent Teacher Ass'n v.

Manufacturers Hanover Trust Co., 524 N.Y.S.2d 336 (1988)(such

contractual provisions are permissible as long as they do not

include an unlawful disclaimer of liability by the bank).

The import of the final quoted paragraph of the

parties' agreement in this case is that the period of time within

which Plaintiff could have notified Defendant of the first

unauthorized signature, regardless of any care or lack thereof by

Defendant, was set at 60 days from the date upon which the

10

statement reflecting that signature was sent to or made available to Plaintiff. Failure to notify the bank within that period of time would result in the allocation of loss under O.R.C. § 1304.35(E) entirely to the customer.

The date upon which the statement reflecting the first unauthorized signature was sent to or made available to Plaintiff was September 30, 2001, at the latest. Accordingly, the parties' agreement required Plaintiff to notify Defendant of unauthorized signatures reflected in that statement by November 29, 2001, at the latest. Whether Plaintiff did so in December 2001 or January 2002, he failed to act within the time prescribed by the parties' agreement. He did not, therefore, act "promptly," as that term has been defined by the parties, and he cannot invoke the protection of O.R.C. §1304.35(E), which applies in instances in which the bank has accepted a check bearing an unauthorized signature through exercise of less than ordinary care. Defendant is, accordingly, entitled to summary judgment with respect to his claim under the statute as it pertains to all of the losses caused by the unauthorized signatures by his former employee.

Plaintiff has also asserted common law breach of contract and negligence claims. Those claims are no more availing.

As the Court has noted, the agreement between the parties required Plaintiff to notify Defendant within certain specified periods of time after a statement including a check bearing an unauthorized signature was sent or made available to him. Plaintiff has not identified evidence suggesting that he or anyone on his behalf complied with those time requirements. Such

11

notification provisions are upheld under Ohio law and the UCC.
See Crescent Women's Medical Group, 806 N.E.2d at 203.  Plaintiff
cannot, therefore, establish that Defendant breached its
agreement with him by failing to recredit his account in the
amount of the losses resulting from the unauthorized signatures.

In any event, while the UCC may not supplant all common
law causes of action, such causes of action are permitted under
Ohio law "only when they are not 'displaced' by the UCC."
Olympic Title Insurance Co. v. Fifth Third Bank of Western Ohio,
No. 20145, 2004 WL 2009285 *6 (Montgomery Cty. Ct App. Sept. 10,
2004)(citing Amzee Corp. v. Comerica Bank-Midwest, No. 01AP-465,
2002 WL 1012998 *10 (Franklin Cty. Ct. App. May 21, 2002)).  The
UCC, at O.R.C. § 1304.35, governs the parties' dispute in this
case and specifies which party, as between them, bears losses
resulting from unauthorized signatures in various circumstances.
While the parties' agreement may supplement the provisions of the
UCC, it does not supplant them.  Accordingly, Plaintiff may not
succeed in recovering for a breach of contract to the extent that
the contract provision upon which it relies attempts to displace
the requirements of the statute.

Plaintiff's specific allegation in this case is that
Defendant "had a contractual obligation to verify the
authenticity of [Plaintiff's] signature on any and all checks
presented against [Plaintiff's] checking account, and to take all
necessary actions not to honor or otherwise debit [Plaintiff's]
checking account for any checks bearing an unauthorized
signature."  Complaint, ¶ 29.  Plaintiff alleges that Defendant
breached that duty "by honoring or otherwise accepting and

clearing for debiting against [Plaintiff's] checking account, each and all of those checks upon which [Plaintiff's employee] had forged [Plaintiff's] signature or otherwise contained an unauthorized signature." Id., ¶ 30.

To the extent that the parties' agreement provided an allocation of the risk of loss that was different in any material respect from that provided by the applicable statute, it is displaced by the statute, and Plaintiff cannot recover for any breach of the provision establishing such an allocation. To the extent that the contractual allocation is consistent with the statute, Plaintiff's recovery is under the statute. In either event, in this case, Plaintiff cannot rely upon the contract to alter the allocation of the risk of loss established by O.R.C. § 1304.35. Plaintiff has failed to establish the existence of a genuine issue of material fact precluding summary judgment in Defendant's favor with respect to his statutory claim. Defendant is also entitled to summary judgment with respect to Plaintiff's breach of contract claim.

Plaintiff's claim for negligence under common law is based upon the same allegations as are quoted above in connection with his breach of contract claim. As the Court has stated, O.R.C. § 1304.35 provides the allocation of the risk of loss between these parties. While common law may be used to supplement the statute, it cannot displace the substantive provisions of the statute. See O.R.C. § 1301.03 ("Unless displaced by the particular provisions" of the UCC, principles of law and equity "shall supplement its provisions"). See also NCS Healthcare, Inc. v. Fifth Third Bank, No. 85198, 2005 WL 1484025

13

*7 (Cuyahoga Cty. Ct.  App. June 23, 2005)("The UCC provides the exclusive remedy where the dispute is governed by its statutory provisions").   To the extent that Plaintiff attempts, by relying upon the common law of negligence, to alter the allocation of the risk of loss from that prescribed in the statute, his attempt is fruitless.  If the loss falls to Plaintiff under the statute, as supplemented but not displaced by the notification requirements of the parties' agreement, the common law cannot alter that allocation.  Plaintiff may not, therefore, pursue his negligence claim against Defendant in this case.

    4.  <u>Conclusion</u>

For those reasons, Defendant's motion for summary judgment (Doc. 35) is hereby **GRANTED** in its entirety, and this action is **CLOSED**.

**IT IS SO ORDERED.**

_____/s/_____
Sandra S. Beckwith, Chief Judge
United States District Court
